## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GWENDOLYN A. MARTINS             *
                                 *
                                 *
        v.                       *          Civil No. CCB-16-1070
                                 *
                                 *
WELLS FARGO BANK, N.A            *
                                 *
                            ********

## MEMORANDUM

Plaintiff Gwendolyn A. Martins ("Martins") brings this lawsuit against defendant Wells

Fargo Bank, N.A. ("Wells Fargo") seeking statutory damages, attorney's fees, and litigation

costs.  Martins asserts a violation of the Real Estate Settlement Procedures Act ("RESPA")

relating to Wells Fargo's alleged failure to comply with RESPA's requirements for managing

borrowers' requests for information regarding their mortgage loans.  Now pending is Wells

Fargo's motion to dismiss (ECF No. 14).  The motion is fully briefed and no oral argument is

necessary.  *See* Local R. 105.6.  For the reasons set forth below, the defendant's motion will be

denied.

## BACKGROUND

Martins, a resident of Baltimore, has a mortgage loan on her property serviced by Wells

Fargo.  (Compl. ¶ 4, ECF No. 1).  In May of 2013, Wells Fargo allegedly sent a letter to Martins

notifying her that her mortgage loan was delinquent due to her failure to pay her property taxes.

(*Id*. ¶ 13).  According to Martins, she never received the 2013 notification.  (*Id*. ¶ 14).  The letter

informed Martins that Wells Fargo had paid the overdue property taxes on her behalf and set up

an escrow account to recover the amount, which would be paid out of an increased mortgage

payment. (*Id*. ¶ 13). Martins, having never received the letter, did not make the increased payments to her mortgage account. (*See id*. ¶ 14, Ex. D, p. 12–17).

In mid-May of 2015, Martins realized there was an issue with her mortgage loan and reached out to a Wells Fargo loan representative. (*Id*. ¶ 15). Martins claimed she did not owe any overdue property taxes, and the Wells Fargo representative told her to submit financial records demonstrating she had been paying taxes on the property as required. (*Id*.). Martins submitted bank statements she claims demonstrate timely payment of her taxes to Wells Fargo on May 18, 2015. (*Id*. ¶ 16). Wells Fargo responded to Martins on June 4, 2015, and informed her that, after analyzing her bank statements and escrow account, it had determined she had been making only partial property tax payments. (*Id*. ¶ 17, Ex. A, p. 1). As a result, Wells Fargo concluded, there remained a shortage on her escrow account. (*Id*. ¶ 17). Wells Fargo also informed Martins that her account had been referred to foreclosure. (*Id*.). Martins subsequently retained an attorney to assist her in managing her mortgage loan issue with Wells Fargo. (*Id*. ¶ 18).

On August 17, 2015, Martins and her attorney sent Wells Fargo a letter containing a number of requests for information regarding Martins' loan. (*Id*. ¶ 19, Ex. B, p. 1–2). The letter identified itself as a "Qualified Written Request," "Notice of Error," and "Request for Information." (*Id.* at Ex. B, p. 1). The letter requested nine itemized pieces of information regarding Martins' loan including a certified true copy of the loan's promissory note, a ledger statement of the loan history covering the life of the loan, the name and telephone number of an individual who could provide Martins with assistance over the phone, an explanation of the alleged debt owed, and notes related to the application and processing of a loan modification. (*Id.* at Ex. B, p. 1–2). Wells Fargo acknowledged receipt of Martins' letter on August 21st, and it

promised to provide Martins with a response by September 3rd.  (*Id*. ¶ 20, Ex. C).  According to

Martins, neither she nor her lawyer received any documentation from Wells Fargo on or before

September 3rd.  (*Id*. ¶ 21).  Martins' attorney contacted Wells Fargo regarding its lack of

response on October 7th and was informed by a Wells Fargo representative that the bank had sent

information to both the plaintiff and her attorney on September 3rd.  (*Id*. ¶ 23–24).  Plaintiff and

her attorney eventually received a copy of the letter on October 10, 2015.  (*Id*. ¶ 26, Ex. D).

Wells Fargo's direct response dated September 3, 2015, contained only two brief paragraphs of

information related to a "notification of payment increase" and "income utilized in the recent

payment assistance review."  (*Id*. at Ex. D, p. 2).   Additionally, Wells Fargo enclosed two letters

it claims to have sent Martins on June 4, 2015, and June 29, 2015, which provide a brief

explanation of the alleged account deficiency.  (*Id*. at Ex. D, pp. 4–6).  The enclosed letter dated

June 29, 2015, also contains a copy of the original letter Wells Fargo claims to have sent Martins

on March 6, 2013, notifying her of the tax delinquency and the opening of the escrow account.

(*Id*. at Ex. D, pp. 7–8).  The June 29th letter also appears to include a customer account activity

statement for Martins mortgage loan covering basic payment history and application from

January 2013 through June 2015.  (*Id*. at Ex. D, pp. 12–17).

Plaintiff filed a claim against Wells Fargo on April 11, 2016, for violations of RESPA,

specifically 12 U.S.C. § 2605(e) and accompanying regulation 12 C.F.R. § 1024.36, alleging

Wells Fargo failed to comply with RESPA's procedures and requirements for handling

borrowers' information requests.  (*Id*. ¶ 28–33).  Martins seeks actual damages for Wells Fargo's

alleged violations under 12 U.S.C. § 2605(f)(1), $2,000.00 in additional statutory damages for

Wells Fargo's alleged pattern of noncompliance under 12 U.S.C. § 2605(f)(1)(B), and costs and

reasonable attorney's fees under 12 U.S.C. § 2605(f)(3).  (*Id.* ¶ 42–44).  Wells Fargo filed the

now-pending motion to dismiss Martins' RESPA claim on May 20, 2016.  (ECF No. 14).

## STANDARD

Wells Fargo moves to dismiss Martins' claim under Federal Rule of Civil Procedure

12(b)(6).  In reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept as true

all of the factual allegations contained in the complaint" and "draw all reasonable inferences in

favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011).  The complaint must allege facts sufficient to "state a claim to relief that is

plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and allow the court

to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  The court is not required to accept the legal

conclusions derived from the facts, and "[a] complaint that provides no more than labels and

conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to meet

the pleading standard.  *Twombly*, 550 U.S. at 555.  Generally, a motion to dismiss for failure to

state a claim "does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *see

also Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013).

## ANALYSIS

Wells Fargo's primary contention is that it was not required to comply with RESPA's

inquiry processing and response regulations because the letter Martins sent Wells Fargo on

August 17, 2015, does not meet the statutory definition of a "Qualified Written Request"

(QWR).  Wells Fargo first argues that the letter, viewed holistically, cannot qualify as a QWR

because the overall purpose of the document is to dispute the validity of the debt and the letter

does not contain sufficient detail regarding the reason Martins believes the debt balance was

incorrect.  Wells Fargo also asserts that none of the itemized information requests can, on an

individual basis, render the correspondence a QWR.  Specifically, Wells Fargo claims that some

of the requests are irrelevant to the "servicing" of Martins' mortgage loan, are duplicative, or

lack sufficient detail regarding Wells Fargo's alleged error.  Plaintiff apparently concedes that a

number of requests contained in the August 17th letter do not qualify as a QWR.  Martins claims,

however, that the requests in paragraphs 4, 5, 6 and 9 of the letter statutorily qualify the

correspondence as a QWR.  The court will not, therefore, address Wells Fargo's specific

objections to paragraphs 1–3, 7, and 8, and instead will focus on the defendant's challenges to

the document as a whole and its individual challenges to the requests in paragraphs 4, 5, 6, and 9.

As explained below, because Martins' letter is not primarily aimed at disputing the validity of

her mortgage loan, is sufficiently detailed and related to the servicing of her loan, and the

requests are not clearly duplicative, the correspondence may qualify as a QWR.  Furthermore,

Wells Fargo's October 10th response did not meet the requirements under RESPA.  Accordingly,

Martins has pled facts sufficient at this stage to demonstrate that Wells Fargo violated RESPA,

and the defendant's motion to dismiss will be denied.

In order to state a claim under RESPA for failure to properly respond to a QWR, the

plaintiff must demonstrate that the defendant was responsible for the servicing of the plaintiff's

loan; the defendant received a valid QWR from the plaintiff that relates to the servicing of a

mortgage loan; the defendant failed to respond adequately; and the plaintiff is entitled to actual

or statutory damages.  *See Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 264–66

(D. Md. 2015); *see also Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d

561, 574–75 (E.D.N.C. 2012).  Plaintiff alleges in her complaint that Wells Fargo is the servicer

of her mortgage loan, and Wells Fargo does not dispute that it qualifies as a loan servicer under

Case 1:16-cv-01070-CCB   Document 20   Filed 12/06/16   Page 6 of 17

the statute.  (*See* Compl. ¶ 7, ECF No. 1).  As will be discussed in detail below, Martins' August

17, 2015, letter to Wells Fargo arguably qualifies as a QWR and relates to the servicing of her

mortgage loan.  The response Wells Fargo provided to Martins on October 10, 2015, did not

contain the information plaintiff requested, and Wells Fargo did not explain why the information

was unavailable or why Wells Fargo was not obligated to provide it to her.  (*See id*. at Ex. D).

Wells Fargo's response was therefore inadequate under RESPA.[1]  Lastly, plaintiff has pled facts

sufficient to demonstrate she incurred actual damages and attorney's fees as a result of Wells

Fargo's RESPA violation, and, having alleged a pattern of noncompliance, she may be entitled to

additional statutory damages.

**I.       Martins' August 17th correspondence may qualify as a QWR**

Because Martins' information request was at least in part related to the servicing of her

mortgage loan, was sufficiently detailed, and was not clearly duplicative, her August 17th

correspondence could qualify as a QWR.  Section 2605(e) of the RESPA requires loan servicers

to respond to certain requests for information from borrowers regarding their loan.  *See* 12

U.S.C. § 2605(e) (2016).  A servicer's duty to respond is triggered when a borrower submits a

QWR for information, and the servicer must acknowledge receipt of a QWR within five business

days.  *Id*. at §2605(e)(1)(A).  The statute defines a QWR as "a written correspondence, other than

notice on a payment coupon or other payment medium supplied by the servicer, that--

> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

---

[1] Wells Fargo's response to Martins on October 10, 2015, was inadequate under RESPA even if, as Wells Fargo claims, it was originally sent on September 3, 2015.  If Wells Fargo sent the response on September 3rd, it would have properly complied with RESPA's requirement that a loan servicer provide a response to a borrower's QWR within thirty days.  *See* 12 U.S.C. § 2605(e)(2).  The response, however, was substantively deficient regardless of when it was dated.

**(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

*Id.* at §2605(e)(1)(B)(i)–(ii).  "[T]he permissible scope of Qualified Written Requests under RESPA [are] limited to information related to the servicing of loans." *Dides v. Ocwen Loan Servicing, LLC*, No. CIV.A. WMN-12-2989, 2013 WL 2285371, at *2 (D. Md. May 21, 2013).[2] As defined by the statute, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).  Courts have recognized that a document requesting information unrelated to the servicing of a mortgage loan, such as a description of the Deed of Trust or Promissory Note, can still be considered a QWR for the purpose of triggering the response requirements when the document also requests information pertaining to servicing of the loan, such as accounting or payment history.  *Ng v. US Bank, N.A.*, No. 15-CV-04998-KAW, 2016 WL 5390296, at *5 (N.D. Cal. Sept. 26, 2016); *see also Bracco v. PNC Mortg.*, No. 8:16-CV-1640-T-33TBM, 2016 WL 4507925, at *1 (M.D. Fla. Aug. 29, 2016) (stating that in order for plaintiff's information request to qualify as a QWR, "at least one" of the multiple requests contained in a correspondence must relate to the servicing of plaintiff's loan).

"RESPA is a consumer protection statute," *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006), and should be liberally construed to most effectively advance Congress's intent, *see McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (per curiam); *cf. Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 985–86, n. 5 (6th Cir. 2009) (stating that because RESPA is a "remedial statute[]," it "should be construed broadly to extend coverage and

---

[2] Unpublished opinions are cited not as precedent but for the persuasiveness of their reasoning.

[its] exclusions or exceptions should be construed narrowly"). Thus, to the extent possible, courts should allow borrowers some flexibility with respect to their requests for information, and perfect compliance is not necessarily required.

      a. *The August 17th correspondence relates to the servicing of Martins' mortgage loan and is not aimed primarily at challenging the loan's validity*

Wells Fargo claims that Martins' August 17th correspondence primarily disputes the overall validity of the loan and is not a loan servicing inquiry. In support of its contention, Wells Fargo points to language in Martins' letter that states plaintiff "dispute[s] the alleged debt in amount and to whom said debt is owed." (Compl. Ex. B, p. 1, ECF No. 1). Wells Fargo also points to Martins' itemized request for a copy of the original promissory note and information about the holder in due course as further evidence that Martins' letter means to take issue with the validity of her mortgage loan. (*Id.*). Martins, however, maintains that her written correspondence was focused on obtaining information regarding the servicing of her mortgage loan.

In general, a communication aimed primarily at disputing the validity of a mortgage loan rather than obtaining loan servicing information does not qualify as a QWR. *See Ward*, 858 F. Supp. 2d at 574–75. Another Judge in this District has explained that correspondences requesting only information relating to the validity of a borrowers' loan, such as a copy of the Deed of Trust and the Note, and devoid of requests relevant to the servicing of the loan, are not QWR's under RESPA. *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 WL 3829520, at *30 (D. Md. Aug. 1, 2014). Again, however, correspondences that contain both requests related to the validity of a loan and requests related to the servicing of a loan are generally considered to be valid QWRs, and RESPA's response requirements will apply as to the qualifying requests. Requests are deemed relevant to the servicing of a loan if they pertain to the

"receipt of payment from a borrower and the making of payments of principal and interest."

*Dides*, 2013 WL 2285371, at *2; *see also* 12 U.S.C. § 2605(i)(3) ("[t]he term 'servicing' means

receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan,

including amounts for escrow accounts . . . and making the payments of principle and interest

and such other payments with respect to the amounts received from the borrower as may be

required pursuant to the terms of the loan.").

As Wells Fargo points out, Martins' August 17th correspondence does contain a number

of itemized requests that are relevant to the validity rather than the servicing of her mortgage

loan, such as a certified true copy of the original promissory note and information about any loan

transfers.  (Compl. Ex. B, pp. 1–2, ECF No. 1).  Furthermore, Martins' letter does state that she

disputes the amount of the debt claimed by Wells Fargo as well as to whom the debt is owed.

(*Id*. at Ex. B p. 1).  If these requests constituted the entirety of Martins' letter, the letter would

not qualify as a QWR.  *See, e.g.*, *Willis*, No. 2014 WL 3829520, at *30.  Martins' letter,

however, also contains a number of requests that are aimed at gathering information regarding

the servicing of her mortgage loan.  For example, Martins requests a general ledger statement

detailing the receipt and application of her mortgage payments, an explanation of her account

delinquency, and mortgage statements for the past year.  (Compl. Ex. B, p. 2, ECF No. 1).

Martins' request in paragraph 4 of her letter refers specifically to the application of payments to

principal and interest, escrow deposits, and escrow balance.  (*Id*.).  Thus, a significant part of

Martins' August 17th correspondence relates directly to the servicing of Martins' mortgage loan

as defined by RESPA.  *See* 12 U.S.C. § 2605(i)(3); *see also Dides*, 2013 WL 2285371, at *2.

Even taking into account that a portion of the correspondence is geared towards the validity of

the mortgage loan, the letter contains enough substance relevant to the servicing of Martins'

mortgage loan to qualify as a QWR.

> b. *The August 17th correspondence is sufficiently detailed*

Wells Fargo contends that the letter as a whole lacks sufficient detail regarding a possible

accounting error on the part of the bank and that, absent allegation of a specific error, the

correspondence cannot qualify as a QWR.  The bank also claims that paragraph 4 of the

correspondence, requesting a copy of the account and general ledger statement, is individually

deficient because it fails to allege a specific servicing error.   Similarly, paragraph 6 fails to give

Wells Fargo "any 'sufficient detail[s]' about why Martins' account may be incorrect."  (Wells

Fargo Mot. Dismiss p. 7, ECF No. 14-1).  Martins maintains that the letter provides Wells Fargo

with sufficiently detailed information regarding the materials sought and that allegation of a

particular accounting error is unnecessary.

The plain language of Section 2605(e)(1)(B) essentially provides plaintiffs with two

separate means of satisfying the requirements for a valid QWR.  Section 2605(e)(1)(B) "is

written in the disjunctive," and "neither the language of the statute nor Congressional intent

require[s] plaintiff[s] to allege an accounting error in order to obtain information from the

servicer."  *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1095 (W.D. Wash. 2013);

*see also Lawther v. OneWest Bank, FSB*, No. C-10-54 JCS, 2012 WL 298110, at *15 (N.D. Cal.

Feb. 1, 2012) ("Section 2605(e)(1)(B) is written in the disjunctive and therefore does not require

that a QWR necessarily contain 'a statement of the reasons for the belief of the borrower, to the

extent applicable, that the account is in error.'" (quoting 12 U.S.C. § 2605(e)(1)(B)(ii))).  Rather,

"[a] QWR is still valid if it instead 'provides sufficient detail to the servicer regarding other

information sought by the borrower.'"  *Lawther*, 2012 WL 298110, at *15 (quoting 12 U.S.C. §

2605(e)(1)(B)(ii)).[3]  A plaintiff need not, therefore, include in their request an allegation of a specific accounting error if the request affords the loan servicer enough detail to identify the information sought and the request is sufficiently related to the servicing of the plaintiff's loan.

Wells Fargo is correct that neither paragraph 4 nor paragraph 6 of Martins' August 17th correspondence mentions any alleged accounting error on the part of the defendant.  (*See* Compl. Ex. B, p. 2, ECF No. 1).  Rather, paragraph 4 requests a copy of the account and general ledger statement showing the loan history that contains a breakdown of the application of Martins' mortgage payments and paragraph 6 asks for a written explanation of the alleged account deficiency and a statement of reasons Wells Fargo believes the account is correct.  (*Id*.).  Though Martins had previously represented to Wells Fargo that she believed the bank had erred in determining that she was not paying her property taxes, Martins' August 17th letter did not reiterate this contention.  (*Id.* ¶ 15, Ex. B, p. 2).  The fact that paragraphs 4 and 6 do not allege a specific accounting or servicing error on the part of Wells Fargo, however, is not automatically fatal to the qualification of the correspondence as a QWR.  Paragraph 4 provides Wells Fargo with a comprehensive description of the information Martins is seeking.  Martins' request for a ledger statement covering the life of the loan specifies she is requesting documentation that can "suffice as a full accounting of the alleged obligation," and she explains how she would like the information to be organized.  (*Id.* at Ex. B, p. 2).  The request for a written explanation for the alleged debt in paragraph 6 is fairly generalized, but Martins does identify discrete types of information such as the amount of the debt and a statement of reasons Wells Fargo believes her account is correct.  (*Id*.).  The level of detail provided in paragraphs 4 and 6 of Martins' letter

---

[3] The relevant portion of RESPA states that a borrowers' correspondence can qualify as a QWR if it "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower."  12. U.S.C. § 2605(e)(1)(B)(ii) (emphasis added).

provided Wells Fargo with enough information to determine the content of the materials plaintiff

was seeking.  Accordingly, Martins has satisfied the "sufficient detail" requirement for

qualification as a QWR under the RESPA.

       c.   *The information requested in paragraphs 4 and 9 of the August 17th*
          *correspondence is not clearly duplicative*

Wells Fargo claims that Martins' request for a general ledger statement showing the loan

history in paragraph 4 of her letter is duplicative of the account information defendant had

already provided to her in previous correspondence.  Similarly, Wells Fargo claims that

paragraph 9 of Martins' correspondence requesting mortgage statements for the previous twelve

months is duplicative of material previously provided in substantial part to the plaintiff.[4]  Martins

maintains the information Wells Fargo had provided to her in the past was different in both

"content and scope" than the information requested in her August 17th letter.  (Martins Resp.

Opp'n p. 11, ECF No. 15-1).[5]

Loan servicers are not required to comply with the response requirements of 12 C.F.R. §

1024.36(d)(1) if an information request is duplicative.  12 C.F.R § 1024.36(f)(1)(i).  Information

---

[4] Wells Fargo also claims that Martins' request for the contact information for an employee who
could provide plaintiff with assistance in paragraph 5 is duplicative.  Based on the exhibits
provided by Martins in her complaint, it appears this is correct.  The letters Wells Fargo sent
Martins on June 4, 2015 and June 29, 2015, for example, both contain contact information for a
Wells Fargo Mortgage Specialist who can be reached directly.  (*See* Compl. Ex. D, pp. 5, 6, ECF
No. 1).  As will be addressed in Section II, however, even if the information requested in
paragraph 5 is duplicative, Wells Fargo did not comply with RESPA's requirements with respect
to addressing duplicative requests.

[5] Martins argues that the court cannot resolve the duplicativeness issue at the motion to dismiss
stage because doing so would resolve a factual issue.  Plaintiff is correct that in considering a
motion to dismiss under Rule 12(b)(6), a court is generally limited to reviewing the allegations
contained in the complaint.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th
Cir. 2016).  The court may, however, consider documents that are "explicitly incorporated into
the complaint by reference and those attached to the complaint as exhibits."  *Id*. at 166.  The
account statements Wells Fargo references to support its contention that Martins' requests are
duplicative are attached to plaintiff's complaint as an exhibit and are referenced by the plaintiff
in the text of her complaint.  (Compl. Ex. D, pp. 12–17, ¶ 30, ECF No. 1).  The account
statements may, therefore, appropriately be considered by the court at this time.

requested by a borrower is duplicative if it is "substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond . . . ." *Id*. The language of Section 1024.36(f)(1)(i) does not require information requests to be identical in order to qualify as duplicative, but the provision does suggest that significant overlap is necessary. In assessing whether an information request is duplicative, the degree of temporal overlap between two requests is relevant. *See, e.g.*, *Lucero v. Cenlar, FSB*, No. C13-0602RSL, 2014 WL 12026660, at *5 (W.D. Wash. Oct. 3, 2014) (holding that the borrowers' information requests were not duplicative in part because the "time periods involved in the two inquiries were distinct").

In support of its contention that the requests in paragraphs 4 and 9 are duplicative, Wells Fargo points to the account activity statement it provided to Martins in a correspondence sent to the plaintiff on June 29, 2015. (Compl. Ex. D, pp. 12–17, ECF No. 1). The account information Wells Fargo provided appears to cover the receipt and application of incoming payments from mid-January 2013 through June of 2015. (*Id*.). The account statement also appears to reflect the amount of received payments applied to principal and interest and contains references to the escrow account. (*Id*.). Certainly, the information Wells Fargo provided in its June 29th correspondence covers at least some of the information Martins requested in her August 17th letter. Paragraph 4 requests a copy of the account and general ledger statement covering the life of the loan and asks Wells Fargo to provide a ledger reflecting the application of payments to interest, principal, and escrow account. (*Id.* at Ex. B, p. 2). Paragraph 6 asks for mortgage statements for the last twelve months. (*Id*.). There is, of course, some temporal overlap between Martins' August 17th requests and the accounting information Wells Fargo provided the plaintiff in its June 29th correspondence. An accounting covering roughly a two-and-a-half year period

from 2013 to 2015, however, is a mere fraction of the information Martins requests in paragraph

4 of her letter.  Though Martins does not specify in her complaint the date of the original

mortgage loan, the complaint suggests the mortgage was taken out before 2004.  (*See id.* ¶ 4).

The June 29th accounting is, therefore, missing at least a decade's worth of information.

Similarly, the June 29th accounting covers Martins' account history only until mid-June of 2015.

(*Id.* at Ex. D).  The accounting fails to cover Martins' July and August mortgage statements.

(*Id.*).  Though the June 29th accounting is only missing two out of the twelve months Martins

asked for in August, the deficiency still amounts to roughly one-sixth of the information sought.

Accordingly, at this stage, the degree of temporal overlap between Martins' ledger requests and

the account statements Wells Fargo provided in June of 2015 is insufficient to establish that the

requests are duplicative.

     **II.**     **Wells Fargo's response to Martins' QWR was inadequate under RESPA**

Wells Fargo does not appear to argue in its motion to dismiss that it complied with the

requirements under RESPA.  Instead, Wells Fargo rests on its claim that RESPA did not apply to

Martins' correspondence and defendant was not obligated to comply with the statute.  Plaintiff

maintains that Wells Fargo was required to adhere to RESPA's response requirements and that

Wells Fargo failed to do so adequately.  The court has decided that Martins' August 17th letter

appears to qualify as a QWR, and therefore Wells Fargo was required to comply with statutorily

mandated response procedures.

Under RESPA, a loan servicer must notify the borrower of the receipt of a QWR within

five business days.  *See* 12 U.S.C. § 2605(e)(1)(A).  Within thirty days of receiving a QWR, a

loan servicer must either make the appropriate corrections to the errors identified in the

borrower's account, provide a written explanation to the borrower stating the reasons the servicer

believes the account to be correct, or provide the information requested or an explanation of why

such information is unobtainable. *See id.* § 2605(e)(2)(A)-(C). The servicer is also required to

provide the borrower with the name and telephone number of an individual who is able to assist

the borrower directly. *See id.*

The Code of Federal Regulations elaborates on loan servicers' responsibilities under

RESPA with respect to responding adequately to borrowers' QWR's. Subject to limited

exceptions, 12 C.F.R. § 1024.36(d)(1) requires a loan servicer to respond to a borrowers' request

for information regarding their loan by either:

> "(i) [p]roviding the borrower with the requested information and contact information,
> including a telephone number, for further assistance in writing; or
> (ii) [c]onducting a reasonable search for the requested information and providing the
> borrower with a written notification that states that the servicer has determined that the
> requested information is not available to the servicer, provides the basis for the servicer's
> determination, including a telephone number, for further assistance."

12 C.F.R. § 1024.36(d)(1)(i)–(ii). Loan servicers are required to respond to borrowers'

information requests by one of the methods listed in § 1024.36(d)(1) within thirty days of

receiving the request. *Id*. § 1024.36(d)(2)(i)(B). Servicers are not obligated to comply with the

investigation or response requirements of Section 1024.36 if the information requested is

duplicative of information already provided to the borrower, confidential, proprietary, or

privileged, or irrelevant to the borrower's mortgage loan account. *See id*. § 1024.36(f)(1)(i)–(iii).

In the event that a loan servicer determines the information requested by a borrower is

duplicative, however, the servicer is still required to notify the borrower within five days of its

determination and the basis for non-compliance. *See id.* § 1024.36 (f)(2).

With respect to RESPA's timing provisions, Wells Fargo appears to have at least

complied with the requirement that it notify the borrower of the receipt of an information request

within five business days.  (*See* Compl. Ex. C, ECF No. 1).[6]  Wells Fargo's proven compliance

with RESPA, however, ends with its timely transmission of the receipt notification.  Though

Wells Fargo's ultimate response to plaintiff's request is dated September 3, 2015, Martins and

her lawyer maintain they did not receive defendant's correspondence until October 10, 2015—

outside the thirty-day response window mandated by RESPA and its accompanying regulations.

(*See id.* ¶¶ 19, 29, Ex. D, p. 1, 2).  There is also no plausible argument that the response

document, standing alone, was responsive to Martins' requests.  Wells Fargo's response consists

only of two brief paragraphs addressing a "notification of payment increase" and "income

utilized in the recent payment assistance review."  (*Id.* at Ex. D, p. 2).  It is not clear from the

letter what this information is relevant to, but it certainly does not provide plaintiff with a

detailed account history covering the life of her loan, an explanation of the alleged debt and why

Wells Fargo deems it to be correct, or mortgage statements for the past twelve months as

plaintiff requested.  (*See id.*).  The letter does point Martins to the documentation accompanying

the cover document, but the attached documents are merely copies of correspondences sent to the

plaintiff on June 4th and June 29th of 2015.  (*See id.*).  The prior correspondences, however, do

not provide Martins with the information she requested in full nor do they offer any explanation

for why the information is unavailable as required by 12 C.F.R. § 1024.36(d)(1)(i)–(ii).  (*See id.*).

Lastly, even if the court were to accept Wells Fargo's contention that some of Martins' requests

were duplicative, Wells Fargo did not comply with the procedures for managing duplicative

requests.  *See* 12 C.F.R. § 1024.36(f)(2).  Wells Fargo never mentioned in its October 10th

response or the accompanying documents the possibility that Martins' requests were duplicative,

---

[6] It is worth noting that by acknowledging the receipt of Martins' August 17th correspondence
within five business days as required by RESPA, Wells Fargo appears to have initially been
treating the correspondence as a QWR.

and it did not provide a basis for this determination.  (*See* Compl. Ex. D, ECF No. 1).

Accordingly, Wells Fargo's response to Martins on October 10th may be deficient under RESPA.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss will be denied.


<u>December 5, 2016</u>                                          <u>            /S/            </u>
Date                                                    Catherine C. Blake
                                                        United States District Judge